IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KIERON ALEXANDER, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | No. 3:20-cv-01062-S (BT) |
| § | |
| DIRECTOR, TDCJ-CID, § | |
| § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Kieron Alexander, a Texas prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The District Court referred the petition to the United States magistrate judge for findings and a recommendation, pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the District Court should DENY Alexander's petition.

## I.   Background

On June 22, 2015, Ricky Griffin, a crack cocaine user, died by blunt force trauma to his head and face. Alexander was the last person known to be with Griffin, and after Griffin's death, Alexander made incriminating statements regarding Alexander's involvement in Griffin's death. Alexander was later charged with murdering Griffin. *The State of Texas v. Kieron Alexander*, Case Number F1575823.

In 2017, a Dallas County jury found Alexander guilty of murder and sentenced him to fifty-five years' imprisonment. The Court of Appeals for the Fifth District of Texas affirmed the trial court's judgment, *see Alexander v. State,* No. 05-17-00599-CR4, 2018 WL 5919129 (Tex. App.--Dallas, 2018, pet. ref'd), and the Texas Court of Criminal Appeals (CCA) refused his petition for discretionary review (PDR), *see Alexander v. State*, No. PD-1379-18 (Tex. Crim. App. 2019). Thereafter, Alexander filed a state application for writ of habeas corpus, which the CCA denied without written order on December 11, 2019.

Alexander then filed this § 2254 petition (ECF No. 3), in which he argues:

(1) He did not agree to waive his right to self-incrimination when he testified;

(2) The evidence was insufficient to prove his guilt; and

(3) The trial court admitted a "false video trying to implement [sic] a confession," and he "never was confronted by a witness." Pet. 7 (ECF No. 3); Reply 5 (ECF No. 15).[1]

---

[1] Alexander's initial statement of his claims in his petition is not entirely clear. Pet. 6-7 (ECF No. 3). However, the Court also considered his later statement of the issues set forth in his reply, which is clearer. *See* Reply 5 (ECF No. 15); *see also* Pet. 6-7 (ECF No. 3). The arguments in Alexander's reply are consistent with the arguments contained in his petition. *See* Pet. (ECF No. 3).

The Director filed a response arguing that Alexander's petition should be denied because his claims are meritless. Alexander filed a reply. Thus, his claims are fully-briefed and ripe for determination.

## II. Legal Standards and Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U. S. C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States

Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

### A. The evidence is sufficient to support Alexander's murder conviction.

Alexander argues the State failed to prove his guilt beyond a reasonable doubt. Pet. 6 (ECF No. 3); *see also* Reply 9 (ECF No. 15) ("The evidence is legally insufficient to support [his] conviction of [sic] murder[.]"). He further argues "the jury unfairly and irrationally inferred" that he murdered Griffin. Reply 12 (ECF No. 15). Finally, Alexander argues that there were no eyewitnesses to the murder, and Griffin was obese and had an enlarged heart. Reply 7, 12 (ECF No. 15). This claim fails on the merits.

When addressing a sufficiency-of-the-evidence claim, a court must view the evidence "in the light most favorable to the prosecution to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Norris v. Davis*, 826 F.3d 821, 833 (5th Cir. 2016) (quoting *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999)); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (the proper inquiry is whether the record evidence at trial could reasonably support the finding of guilt beyond a reasonable doubt). "The credibility of the witnesses and the weight of the evidence is the exclusive province of the jury." *Hebert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018) (quoting *United*

*States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)). Any credibility determinations and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citing *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir.1999). All factual determinations are presumed correct, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

On direct appeal, Alexander similarly argued the evidence was insufficient to support his murder conviction and the jury's implicit rejection of his self-defense claim. *Alexander*, 2018 WL 5919129, at *5. Specifically, Alexander argued that the evidence failed to demonstrate beyond a reasonable doubt that he caused Griffin's death. *Id.*

The Fifth District Court of Appeals found: "Viewing the cumulative force of all of the evidence in the light most favorable to the verdict, we conclude a rational jury could have found against Alexander on the self-defense issue beyond a reasonable doubt." *Id.* at *7. The jury heard evidence that Griffin died in Bertha "Ebony" Traylor's apartment. Traylor testified that, on the day Griffin died, she encountered Alexander—who had been "living on the streets"—and invited Alexander to her apartment. *Id.* at *2. Alexander had been "smoking ice" and apparently had not slept in days. *Id.* at *7. Later, Griffin came to Traylor's apartment to buy drugs. *Id.* at *2. Griffin was drunk, high, and paranoid. *Id.* at *7. Traylor left Alexander and

Griffin alone at her apartment. *Id.* Alexander was the last person Traylor saw with Griffin before he died. *Id.* at *6-7.

The jury also heard from Dallas Police Department Officer Marcus Negron, the officer who responded to the homicide call at Traylor's apartment. Negron testified that he encountered Alexander looking "extremely agitated" and "amped up." *Id.* Alexander took a fighting stance, and he punched his fists in the air. *Id.* Alexander told Negron he suffered from post-traumatic stress disorder and "just snapped." *Id.*

The jury listened to a recording of a phone call Alexander made to Traylor from jail. *Id.* Alexander told Traylor he was acting in self-defense because Griffin was "messing with" him. *Id.* The jury also heard Alexander tell Traylor that he beat up Griffin with his hands and put him in a chokehold. *Id.*

The jury watched a video of Alexander's custodial interrogation by Dallas Police Department Detective Eric Barnes. *Id.* During that interrogation, Alexander told Barnes that Griffin made a homosexual pass at him, and he "just clicked." *Id.* Alexander stated that he "got into it" with Griffin in the living room, and "when [he] came to, it was too late." *Id.* Alexander further stated that he was not using anything other than "his hands" to hit Griffin. *Id.*

The jury also heard Dr. Reed Quinton, the Dallas County deputy chief medical examiner, testify that Griffin's autopsy showed blunt force trauma

6

to his head and face. *Id.* Griffin had signs of hemorrhaging in his eye and bruises on his neck, indicating he had been strangled. *Id.* But there were no ligature marks on Griffin's neck, which corroborated Alexander's statements in his recorded telephone call to Traylor and during his custodial interrogation that he only used his hands to attack Griffin. *Id.* Quinton testified that the lack of ligature marks suggested that Griffin had been strangled by someone's hands "being used as a deadly weapon" as opposed to using an object for strangulation. *Id.* Quinton opined that Griffin's death was the result of homicidal violence. *Id.*

The Director agrees with the Fifth District Court of Appeals' reasoning and adopts it as his own. Resp. 18 (ECF No. 13). And Alexander has not presented a compelling argument to the contrary. *See* Pet. 6 (ECF No. 3); Reply 9-14 (ECF No. 15).

In Alexander's case, the jury was the fact finder. A reviewing court must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318-19); *see also United States v. Landerman*, 109 F.3d 1053, 1067-68 (5th Cir. 1997)). "The jury has the sole responsibility to judge the weight and credibility of the evidence[.]" *Cobb v. Wainwright*, 666 F.2d 966, 971 (5th Cir. 1982). "[I]t is not necessary that every fact point directly and independently to the

7

defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (en banc) (citing *Russell v. State*, 665 S.W.2d 771, 776 (Tex. Crim. App. 1983)). When on federal habeas review, "[a] federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts." *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985) (citing *Dunn v. Maggio*, 712 F.2d 998, 1001 (5th Cir.1983); *Amstead v. Maggio*, 720 F.2d 894, 896–97 (5th Cir.1983)). A federal habeas judge must respect any credibility determinations made by the trier of fact. *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993) (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)).

When the Court affords proper deference to the jury as trier of fact, the evidence presented at Alexander's trial was enough to support his conviction for murder. *See* 28 U.S.C. § 2254(e)(1); *see also Marler*, 777 F.2d at 1012 ("A federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts."). Alexander's attack on the sufficiency of the evidence underlying his conviction is little more than an improper attempt to get this Court to second-guess the jury's credibility determinations, implicit factual findings, and resolution of any conflicts in the evidence. The Fifth District Court of Appeals found that the evidence was sufficient to support Alexander's conviction, and this decision by the state court is entitled to deference by this federal habeas court. *See Parker v.*

8

*Procunier*, 763 F.2d 665, 667 (5th Cir. 1985) (per curiam) (applying the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 317 (1979), and concluding the factfinder "behaved rationally" in finding the defendant guilty of murder beyond a reasonable doubt).

Finally, Alexander has failed to demonstrate that the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Brown*, 544 U.S. at 141 (citing 28 U.S.C. § 2254(d)(1)). For these reasons, there is sufficient evidence supporting Alexander's conviction, and this claim should be denied.

### B. The State did not violate Alexander's right against self-incrimination.

Next, Alexander suggests that the State violated his right against self-incrimination, and he summarily argues "[n]either did I waiver or sign any paper of consent to a written or oral testimony." Pet. 6 (ECF No. 3); *see also* Reply 14 (ECF No. 15) (arguing the trial court erred by admitting his video recorded interrogation where he did not waive his *Miranda* rights). But Alexander provides no details in support of this argument. Pet. 6 (ECF No. 3); *see also* Reply 14-16 (ECF No. 15). As discussed below, this claim lacks merit.

Alexander also raised this claim before the Fifth District Court of Appeals. *See Alexander,* 2018 WL 5919129, at *8-10. That court thoroughly addressed Alexander's self-incrimination argument as follows:

**WAIVER OF RIGHTS UNDER MIRANDA AND TEX. CODE CRIM. PROC. ANN. art. 38.22**

In his second issue, Alexander argues the trial court erred by admitting the recording of his interrogation into evidence, because he did not expressly or implicitly waive his Miranda rights or his rights under article 38.22 of the Texas Code of Criminal Procedure prior to the interrogation. At trial, Alexander objected to the admission of the recorded interrogation on the grounds he did not waive his Fifth Amendment right against self-incrimination. The trial court overruled the objection and admitted the recording into evidence without making findings of fact or conclusions of law regarding the voluntariness of Alexander's waiver. Portions of the recording were played for the jury.

By order dated September 20, 2018, we abated this appeal and ordered the trial court to prepare the requisite findings and conclusions concerning the voluntariness of Alexander's waiver. *See* Tex. Code Crim. Proc. Ann. art. 38.22 § 6. Pursuant to this Court's order, the trial court made findings of fact as to the voluntariness of Alexander's waiver. Among other things, the trial court found: "[Alexander] was advised of his Miranda warnings by Detective Barnes" and "[Alexander] acknowledged that he understood his rights"; "[d]uring the interview, [Alexander] was still wearing his street clothes" and "was not shackled or handcuffed"; "[Alexander] gave his statement after an implicit waiver of his rights under Article 38[.]22 and Miranda that was done both knowingly and voluntarily"; "[Alexander] was awake, coherent, and specific with his answers during the interrogation"; "[Alexander] never requested an attorney or asked to terminate the interview"; and "[Alexander] voluntarily gave his statement and there were no promises, threats, or coercion made by Detective Barnes or any other officer."

10

On appeal, Alexander complains the trial court erred in admitting the video recorded interrogation because Detective Barnes only asked Alexander if he understood his rights, and not whether he waived his rights. Alexander also argues he did not sign or initial any documents indicating he wanted to waive his rights. Alexander further avers that the circumstances depicted in the video recording, including evidence he was "extremely tired," "could barely stay awake," and "was apparently under the influence of ice," do not support a knowing, intelligent, and voluntary waiver of his Miranda rights or his rights under article 38.22. The State responds that article 38.22 does not require a written or express oral waiver, and that waiver may be inferred from Alexander's actions and words. The State argues the totality of the circumstances surrounding Alexander's interrogation shows he implicitly waived his rights knowingly and voluntarily, without police intimidation, coercion, or deception.

### Standard of Review and Applicable Law

We review a trial court's denial of a motion to suppress a statement provided by a defendant during a custodial interrogation for an abuse of discretion, and apply a bifurcated standard of review. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). We afford almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor. Id. However, we conduct a de novo review of mixed questions of law and fact that do not hinge on credibility or demeanor. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). When, as here, the trial court made explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We sustain the trial court's ruling if it is correct under any applicable theory of law. *Furr*, 499 S.W.3d at 877.

In *Miranda*, the Supreme Court held that when an individual is taken into custody and subjected to questioning, he must be warned prior to any questioning that he has the right to remain silent, anything he says can be used against him in a court of law, he has the right to the presence of an attorney, and if he

11

cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. 384 U.S. at 479. An individual given these warnings may knowingly and intelligently waive these rights and agree to answer questions or make a statement. *Id.*

Article 38.22 of the Texas Code of Criminal Procedure governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Article 38.22 provides no oral statement made by an accused during a custodial interrogation is admissible as evidence against him in a criminal proceeding unless the accused, prior to making the statement but during the recording, was provided with warnings virtually identical to those required by *Miranda* and a warning that he has the right to terminate the interview at any time, and the accused knowingly, intelligently, and voluntarily waived the rights set out in the warning. Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a)(2).

The State has the burden of showing by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his rights under *Miranda* and article 38.22. *See Leza v. State*, 351 S.W.3d 344, 349, 351 (Tex. Crim. App. 2011). In evaluating whether a defendant waived his rights, we consider: (1) whether the waiver was made voluntarily, which is defined as being a product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) whether the waiver was made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010). Only if the totality of the circumstances surrounding the interrogation reveals both an un-coerced choice and the requisite level of comprehension may a court properly conclude that rights have been waived. *Id.* The "totality of the circumstances" analysis requires the consideration of all the circumstances surrounding the interrogation, including the defendant's experience, background, and conduct. *Id.*

## Analysis

Alexander contends he was not asked for and did not provide a written or oral waiver of his rights. However, neither a written

12

nor an express oral waiver is generally required. *Id.* at 24. Article 38.22 does not require that the defendant expressly or explicitly waive his rights, nor does it require that he be asked whether he wishes to waive his rights. Tex. Code Crim. Proc. Ann. art. 38.22. The statute requires only that the requisite warnings be given to the defendant and that his waiver of rights be made knowingly, intelligently, and voluntarily. *Id.*, art. 38.22 § 3(a)(2).

Nor does *Miranda* require a waiver to assume a particular form; at least in some cases, a "waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). We may conclude Alexander waived his *Miranda* rights if the "totality of the circumstances surrounding the interrogation" reveals an uncoerced choice and the requisite level of comprehension. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

*Voluntariness*. Our examination of the totality of the circumstances surrounding the interrogation shows Alexander made a free and deliberate choice to voluntarily waive his rights. In the recording of Alexander's interrogation, Detective Barnes said he wanted to talk to Alexander about "what happened [that] day." Placing a card on the table next to Alexander, Detective Barnes explained, "[b]ut I got to read you this first, and then with your permission, I'm going to ask you a couple of questions. If you give me permission. All right?" Alexander replied, "Yeah, man," and sat up. Detective Barnes then stated, "This is your *Miranda* warning," and proceeded to read Alexander his *Miranda* rights from the card. Detective Barnes also told Alexander he could "terminate this interview" at any time. When asked if he understood, Alexander replied, "Yes, sir." Alexander remained upright for the duration of his *Miranda* warning.

Alexander did not request an attorney or ask Detective Barnes to terminate the interrogation at any time. He freely chose to answer some of Detective Barnes's questions with clarity and detail. For example, Alexander made clear he was not comfortable with Griffin's homosexual pass, telling Detective Barnes, "and that gay pass, I just felt nervous, I just felt nervous, I didn't feel right." He also chose to not answer some of Detective Barnes's questions, further suggesting the statements

13

he did make were voluntarily provided. The recording of Alexander's interrogation shows no evidence of intimidation, coercion, or physical or psychological pressure to elicit statements from Alexander. In its findings of fact, the trial court noted that Detective Barnes was conversational and polite throughout the interview, and never yelled, cursed or appeared angry. The trial court's findings confirmed Detective Barnes's testimony that he took care of Alexander's basic needs, noting that Detective Barnes provided a candy bar to Alexander and asked him if he was hungry or needed to use the restroom, and Alexander responded, "No, I'm good."

*Awareness*. The totality of the circumstances surrounding the interrogation also shows Alexander's waiver was made with full awareness of both the nature of the rights he abandoned and the consequences of his decision to abandon them. *See Joseph, 309 S.W.3d at 27*. The warnings Detective Barnes read to Alexander made him fully aware of his rights under article 38.22 and Miranda, and of the consequences of waiving those rights. Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2(a), 3(a)(2). Alexander affirmatively acknowledged that he understood his rights, and his conduct during the interrogation demonstrated he possessed the requisite level of comprehension.

We are unpersuaded by Alexander's arguments regarding the influence of his fatigue and "ice" intoxication on the knowing, intelligent, and voluntary waiver of his rights. *See, e.g., Leza, 351 S.W.3d at 352*–53 (concluding waiver of *Miranda* rights not involuntary where heroin intoxication, if any, was not so acute as to overcome defendant's capacity to resist reasonable, non-coercive tactics by police to persuade him to waive rights). The trial court—the exclusive judge of the credibility of the witnesses and the weight to be given their testimony—found Detective Barnes to be a credible witness. Detective Barnes testified that just before being taken into custody and entering the interrogation room, Alexander was conversing with officers at the scene. Detective Barnes believed Alexander put his shirt-covered head on the table as "an act" because "he didn't want to talk about [the] fact he was involved in [the] death of Mr. Griffin." Moreover, Detective Barnes testified he asked Alexander certain questions to "get a feel" for his "level of awareness" and Alexander was able to recall and provide "details about being in the military," and to spell his name.

14

> Alexander also answered Detective Barnes's questions lucidly, and occasionally with sarcasm. For example, Detective Barnes testified that when he asked Alexander "what time [it was] when he went over to the apartment when all this happened," Alexander said he did not know because he did not look at his watch. Additionally, the trial court's findings of fact indicate Alexander "was awake, coherent, and specific with his answers during the interrogation."
>
> Notwithstanding any alleged "ice" intoxication, from the totality of the circumstances the trial court could rationally conclude and did not abuse its discretion in finding that Alexander knowingly and voluntarily waived his *Miranda* and article 38.22 rights. Giving proper deference to the trial court's findings and evaluations of witness credibility and demeanor, we conclude the evidence supports the trial court's finding that Alexander knowingly and voluntarily waived his rights. We resolve Alexander's second issue against him.

*Alexander*, 2018 WL 5919129, at *8–10.

The Director agrees with the Fifth District Court of Appeals' rationale and decision on this issue and adopts the reasoning as his own. Resp. 24 (ECF No. 13). And Alexander has failed to present a compelling argument to the contrary. *See* Pet 6 (ECF No. 3); Reply 14-16 (ECF No. 15).

The Court finds that Alexander has failed to demonstrate the Fifth District Court of Appeals' decision was contrary to or an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 380-84; *see also Brown*, 544 U.S. at 141 (citing 28 U.S.C. § 2254(d)(1)). Accordingly, this claim should be denied.

### C.     **Alexander's remaining claims are conclusory.**

Alexander cites to the "Sixth Amendment," and he summarily argues that the "Court admitted a false video to implement a confession" and "[n]ever was confronted by a witness." Pet. 7 (ECF No. 3). These bare arguments have no factual or legal support, and they are therefore legally insufficient. *See id.* Because these claims are legally insufficient, they are subject to summary dismissal.

Although *pro se* filings are liberally construed, this does not mean the court must develop the arguments on behalf of the litigant. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("[M]ere conclusory allegations on critical issues are insufficient to raise a constitutional issue."). Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (noting that where a habeas petitioner fails to brief an argument adequately, it is considered waived). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

16

Alexander's two remaining arguments are vague and conclusory, and he does not cite to any legal authority in support. These arguments lack the necessary detail this Court needs to properly address them. Because Alexander's remaining arguments are simply too brief, it is impossible to determine the exact nature of these claims. Therefore, Alexander's two remaining arguments are subject to summary dismissal.

### D.     **Alexander has failed to meet his burden under the AEDPA.**

Last, Alexander fails to meet his burden of proof under the AEDPA. Specifically, the CCA's denial of his claims served as an adjudication on the merits. State Habeas Ct. R. at "Action Taken" sheet (ECF No. 14-25); *see* 28 U.S.C. § 2254(d); *see also Valdez v. Cockrell,* 274 F.3d 941, 950 (5th Cir. 2001) (noting that under the AEDPA, there is a deferential standard of review, and a federal court must defer to a state court adjudication on the merits). An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000); *see also Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits.").

In sum, this Court must defer to the state court's determinations. Because the state habeas court's rejection of Alexander's claims did not

17

result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, he is not entitled to relief.

### III. Recommendation

For the foregoing reasons, the Court should DENY Alexander's § 2254 petition.

Signed September 27, 2022.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*